said Terrance A. McCauley, who left no wife or children. The un-contradicted evidence of the plaintiff shows that he demanded an accounting of the executor of the estate of the deceased adminis-trator, and that such accounting was refused. He also tried to compel said executor to account before the surrogate of this county, but the proceedings were dismissed for want of jurisdiction, as the said executor and estate of the deceased administrator were not within the state of New York. Terrance A. McCauley died in 1894, and in the same year, to wit, on May 23, 1894, the said Daniel. be-came administrator. Up to the time of his death, on January 8, 1898, nearly four years after his appointment as such administrator, he had taken no steps towards an accounting, and, so far as ap-pears, still held the $5,000 that he had received as such administra-tor from the estate of Terrance A. McCauley, deceased. His exec-utor refuses to account. The plaintiff claims that the deceased ad-ministrator appropriated the said sum to his own use; but of this we have no positive or absolute proof. The said administrator had never filed an inventory, or given any indication of the subsequent disposition of the said sum of $5,000 received by him from the sale of the said patents belonging to the estate of Terrance A. McCauley. The plaintiff, in spite of reasonable efforts, has never been able to get the executor or estate of the said deceased administrator within the jurisdiction of the New York courts. It is urged that, although the complaint alleges that Terrance A. McCauley left no debts, no attempt was made on the trial to substantiate this allegation. This, however, is not of much importance at the present stage of the case; for, to quote the language of Mr. Justice Rumsey (who only dissented from his colleagues upon the question of plaintiff's duty to obtain the leave of the court to sue), the rule is that:

"The representative of the estate of Terrance A. McCauley, until it shall have been fully administered, is the administrator de bonis non, and all the rights of recovery which exist for the benefit of that estate are vested in him for the benefit of creditors, if there shall turn out to be any creditors, and, if there are no creditors, as is alleged in the complaint, then for the benefit of the next of kin who will receive the estate in due course of administration from the plaintiff."

See Dunne v. Surety Co., 43 App. Div. 100, 59 N. Y. Supp. 429.

I am inclined to think that there is sufficient evidence to sustain the material allegations of the complaint, and that, under the law of the case as laid down by the appellate division, the plaintiff is entitled to judgment.

Judgment for plaintiff.

(34 Misc. Rep. 577.)

### GROSSMEYER v. DISTRICT NO. 1, I. O. B. B.

(Supreme Court, Trial Term, New York County. April, 1901.)

BENEFICIAL ASSOCIATION—DESIGNATION OF BENEFICIARIES—CHANGE OF BY-LAWS.

When a member of a benefit society procures a policy for the benefit of a certain person, the status of the beneficiary cannot be changed by an alteration in the by-laws changing the manner of designating bene-ficiaries, and requiring that, unless a member who left no wife or child

designated the beneficiary in a certain manner, no benefit should accrue, where the change was made after the member, who was unmarried, had become afflicted with progressive paresis, causing death; the amendment either being not retroactive as to him, or so unreasonable, because of his health, as not to apply to him.

Action by Regina Grossmeyer against District No. 1, Independent Order B'nai Berith. Verdict for plaintiff.

Blumenstiel & Hirsch (A. Blumenstiel, of counsel), for plaintiff.
S. M. Roeder (Julius J. Frank, of counsel), for defendant.

GIEGERICH, J. The action is brought to recover from the defendant, a domestic corporation incorporated under the laws of this state (Laws 1878, c. 188), the sum of $1,000, out of the endowment fund established by the defendant under its constitution and laws. The question involved is purely one of law, and the undisputed facts, so far as essential to the point presented, are as follows: The plaintiff's son, Emanuel Grossmeyer, became a member of the Mt. Sinai Lodge, No. 270, one of the subordinate bodies of the defendant, on the 6th day of January, 1891. At that time the defendant maintained a fund known as the "Endowment Reserve Fund," in which all members of the order were entitled to participate on the payment of designated premiums or dues. It was further provided by the laws of the defendant that, upon the death of a member so participating, the sum of $1,000 should be paid as follows: First, to his widow; second, to his children, if he left no widow; third, to his father, if he left neither widow nor child; fourth, to his mother, if he left neither widow, child, nor father; and, fifth, to such beneficiaries as he might designate, provided he left neither widow, child, father, nor mother. While the rules just quoted as to beneficiaries were in existence, and in January, 1892, Emanuel Grossmeyer became insane, and was committed to Bloomingdale Asylum on the 28th day of July, 1892, suffering from general paresis, which disease was progressive, and resulted in his death on the 17th day of September, 1896. His membership in the lodge was, however, continued, and his dues were regularly paid up to the date of his death, at which time it is undisputed that he was a member in good standing. In January, 1896, while Emanuel Grossmeyer was thus insane and confined in the asylum, the laws relating to beneficiaries were amended so as to provide as follows:

"Upon the decease of a participant in this fund there shall be paid the amount secured by him, respectively: First, to his widow; second, to his children, if there be no widow. But the brother may, by a designation in the book provided for that purpose, declare that the endowment, or a part thereof, shall be paid to such beneficiary or beneficiaries as he may designate, to the exclusion of his children, provided he leaves no widow. In such case a designation to the executors or administrators of the brother is a valid and sufficient designation. * * * A member having neither wife nor child must designate in writing, in such book, in the manner hereinbefore provided, to whom the sum secured shall be paid. In the event of a failure of a member to make such designation, such sum shall not be paid."

Upon the death of Emanuel Grossmeyer, his mother, the plaintiff, made application for payment of the $1,000 now sued for; and in

December of that year the defendant wrote to the secretary of the subordinate lodge to which the deceased belonged that the endowment money was ready for payment, and that Mrs. Grossmeyer might obtain the same by calling for it on the 15th of that month. Before that date arrived, however, the defendant changed its position, and refused to make payment, on the ground that the deceased had not designated any beneficiary as required by the laws of the organization last above quoted. The briefs submitted on either side are very elaborate and instructive, and carefully review the authorities in point, not only in this but in various other jurisdictions. It will not be necessary, however, to consider all the questions discussed, because I think the case can be decided upon the single ground that an amendment of a law or by-law of the character just quoted, concerning the designation of beneficiaries, is either not intended to be retroactive at all, or, if intended to be retroactive in such a case as is here presented, it is unreasonable, and therefore void. The defendant contends that, inasmuch as the laws of the society at the time the plaintiff's son became a member expressly authorized amendments thereof, neither the plaintiff nor her son had any rights which were not subject to this power of amendment. The validity of this contention, as a general proposition, may be conceded, but it does not follow that the plaintiff has no cause of action upon the particular facts here presented. To decide in favor of the plaintiff does not necessarily involve the conclusion that she had a vested right in the endowment in question, or that the defendant did not possess the fullest power to amend its laws relative to the method of designating the beneficiaries, or that the amendment was not intended to be retroactive as to the ordinary members of the organization, or that the insanity any more than the death of a member before complying with the new provision would excuse such noncompliance. All that is necessary to decide is that, under the circumstances here shown, it cannot be presumed that the defendant intended by this amendment to require a member already insane, and who continued insane up to the time of his death, to do an act which only a sane and competent person could do, namely, designate a beneficiary. To require such a thing would be to require an impossibility, and, as said before, if the amendment was intended to be retroactive in such a case as is here presented, it is palpably unreasonable, and therefore void. It should, perhaps, be pointed out that the present case differs in a very important particular from Hellenberg v. District No. 1, 94 N. Y. 580, relied upon by the defendant. In that case, which was quite similar in its main features with the present one, the opinion closed with these words:

"The claim that a further designation after the death of his mother was excused by the testator's insanity for a portion of the interval preceding his death is not well founded. A designation was the condition precedent of defendant's liability. The death of Lowenstein without fulfilling it, however sudden or unexpected, in no manner excused its prior necessity, nor could his insanity."

From this it is obvious that the member in that case was not, as here, insane during the entire interval succeeding the amendment

and preceding his death; and the court held that an intervening insanity could have no greater effect in the way of an excuse for the nonperformance of a condition precedent than could the intervention of death. In that case the member failed to take advantage of an opportunity which he once had to comply with the amended requirements of his order. In this case the member never had an opportunity. The case of Pfeiffer v. Weishaupt, 13 Daly, 161, is also distinguishable from the present one. There, as said at page 163 of the opinion:

"The whole contention in the trial was as to whether the alleged insanity of the accused at the time the charges were preferred against him was an answer to the defense founded upon his expulsion for neglecting to appear and answer such charges. It is claimed that Pfeiffer, being apparently and actually of unsound mind, could not be duly summoned or convicted of neglect to appear, and punished by expulsion and the loss of all rights in the society. There is no force in this point. A person who has even been adjudged a lunatic, and of whom a committee both of person and estate has been appointed, may be sued at law, and the judgment recovered against him is not void. Sternbergh v. Schoolcraft, 2 Barb. 153. It would be a contempt of the court which appointed the committee to sue without leave, but the judgment is valid. See authorities cited in report of above case. There was no reason why the lodge should not proceed against a person not adjudged a lunatic. He could have been defended, and his rights protected. If they were not, the lodge might regularly proceed according to its laws. His alleged insanity did not excuse his failure to appear. Hellenberg v. District No. 1, 94 N. Y. 580."

It is apparent that all that was held in the above case was that the insanity of a member is no reason why the trial of charges made against such member should not be proceeded with, the same as the trial of an ordinary action against an insane person. Insanity does not furnish immunity against any cause of action that may exist against the insane person, nor does it furnish immunity against any charges that may exist against the member of an organization. In either case the work of his defense is not of a purely personal kind, and can be undertaken and performed by others as well as by himself. The law does not, however, permit an insane person to make a will; nor does it allow any one else to make a will for him. There is no force in the suggestion that the appointment of a committee might have been procured, and that such committee might have made the required designation of the beneficiary. The deceased died unmarried, and left, him surviving, his mother, his nearest relative, in whom the fund in question vested under the laws of the defendant as they existed at the time that the insanity intervened, subject, it may be conceded, to being devested by any reasonable amendment of those laws. Up to the time of the deceased's insanity the mother, therefore, remained the beneficiary; and, there being no change in his relations, there would be no possible ground for any committee or court to act other than in accordance with what might naturally be regarded as the incompetent's last known wish. Obviously, it would be idle to require a court proceeding to again accomplish the very thing which had been accomplished during the incompetent's days of sanity, and to deny the plaintiff's rights because such a proceeding had not been taken would be wholly unjust. The dictates of common justice compel a conclusion in favor of the

plaintiff, and perhaps the best legal reason that can be assigned for such a conclusion is the one stated at the outset, namely, that the amendment in question was not intended to be retroactive, or, if intended to be retroactive with respect to the deceased, it was unreasonable and invalid as to him. A verdict should therefore be directed in favor of the plaintiff for the amount demanded, with interest, amounting altogether to the sum of $1,270. Motions for an extra allowance and for a stay of execution and time to make and serve a case on appeal may be noticed for the same time as the settlement of the order to be entered hereon, and of which two days' notice must be given.

Ordered accordingly.